```
                  UNITED STATES DISTRICT COURT
                      DISTRICT OF VERMONT


UNITED STATES OF AMERICA      :
                              :
      v.                      :     File No. 1:07-CR-92
                              :
RALPH FARNSWORTH              :
_____:
```

## RULING ON DEFENDANT'S MOTION TO SUPPRESS
(Paper 15)

I.   Introduction

    Before the Court is Defendant Ralph Farnsworth's Motion to Suppress statements made on March 16, 2005 which the government seeks to admit against him.  For the reasons set forth below, Defendant's motion is denied.

II.  Background

    Based upon the record before the Court, including the testimony offered at the April 28, 2008 hearing, the Court finds the following facts.  In 2003, DEA Special Agent Thomas Doud became involved in an investigation of a cocaine trafficking organization that was receiving cocaine from suppliers in California and distributing it in Vermont.  When Defendant's name surfaced as one of the individuals involved in this organization, Doud, accompanied by DEA Special Agent Michael Warren, drove to Defendant's home in Manchester, New Hampshire on March 16, 2005 to interview him.  When the agents arrived, Defendant was not

1

home but his roommate gave them Defendant's cellular phone number.  No one answered when Doud called the cellular number so he left a voicemail with a call back number explaining he was a DEA agent who wished to interview Defendant concerning an ongoing case.

Defendant returned the call shortly thereafter and Doud and Defendant discussed the investigation of the cocaine trafficking organization.  Defendant voiced his awareness of the investigation and his concern that others had given the agents false impressions about Defendant's role, and explained he was looking forward to a chance to "clear the air" about his involvement.  Therefore, it was agreed Defendant would meet the agents that evening at a McDonald's parking lot in Warner, New Hampshire.  Doud did not threaten Defendant with arrest or imply he would be arrested by the U.S. Marshals Service if Defendant did not meet to discuss the investigation in either the voicemail or during the phone conversation.[1]

Once all had arrived at the parking lot, Doud stepped out of the agents' unmarked vehicle, introduced himself, and asked

---

[1]The Court notes the testimony of Defendant and Danielle Rumrill, Defendant's former girlfriend, differed in several ways from the testimony of Doud concerning the circumstances leading up to the meeting.  On this score, and as a general matter, the Court finds Doud's testimony more credible than Defendant's and Rumrill's based on the Court's observation of the witnesses' demeanor and the overall substance of their testimony.  Additionally, Rumrill did not hear the voicemail left by Doud or the conversation between Doud and Defendant.

Defendant if he would speak with him in the agents' vehicle to avoid the chill of a New Hampshire March evening and to maintain privacy.  Defendant agreed and sat in the front passenger's seat; Doud took the back seat and Warren remained in the driver's seat. Defendant was never patted down or touched/restrained in any way. No firearms were displayed, although handcuffs may have been visible between the front seats.  At all times, the vehicle's doors remained unlocked.

The conversation began in an "easy-going" manner and touched on topics ranging from baseball to snowboarding.  The conversation then turned to the investigation.  Defendant acknowledged he had used cocaine with a certain individual involved in cocaine trafficking but denied that he himself was involved in trafficking.  Defendant in turn asked the agents a number of questions concerning any information the agents really "had on him."

At this point, Doud believed Defendant was not being truthful because his answers directly conflicted with information the agents had already gathered.  Doud told Defendant as much and on multiple occasions, suggested the interview stop and Defendant should leave because in Doud's mind, continuing the interview was simply not a productive use of everyone's time.  Doud also explained that the next step in the case for law enforcement would be to present information to a grand jury and in all

likelihood, if Defendant saw law enforcement in the future it could be in the context of an arrest warrant.  Defendant responded by maintaining his innocence, but eventually let out a groan, said he was about "to crack," clutched his head, and told the agents he wanted to tell them the truth.[2]

The conversation then took off in a decidedly different direction and for the next 30-45 minutes, Defendant made a number of statements about his and another person's involvement with cocaine trafficking during 2003.  The interview concluded with Defendant stating he wished to give information not only concerning the Vermont case being investigated by Doud, but also about people who were supplying cocaine in New Hampshire.[3]

The entire interview lasted approximately one to one and a half hours.  Defendant was never told he could not leave the agents' vehicle.  There is no indication the tenor of the questioning remained anything but calm and Defendant never stated he wished to stop talking.

III. Discussion

Defendant seeks to suppress statements made to the agents during the March 16, 2005 meeting, arguing he was subjected to a

---

[2] As Defendant explained, he had quite a difficult time deciding to tell the truth because in his primarily Italian family, the code of silence was an important virtue.

[3] At some point after the March 16, 2005 meeting, Defendant met with an agent from DEA's Concord, New Hampshire office and also provided further information to Doud.

custodial interrogation without being advised of his <u>Miranda</u> rights.  The government retorts Defendant was not in custody and thus there was no need for the agents to give <u>Miranda</u> warnings.

Consistent with <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), statements made by an individual during custodial interrogation are inadmissible if not preceded by certain warnings.  An individual is in custody for purposes of <u>Miranda</u> when "a reasonable person in [the individual's] position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest."  <u>United States v. Newton</u>, 369 F.3d 659, 671 (2d Cir. 2004) (quoting <u>United States v. Ali</u>, 68 F.3d 1468, 1472 (2d Cir. 1995)).  In determining whether an individual is in custody, an inquiring court must look at all the circumstances presented, including: "whether a suspect is or is not told that she is free to leave; the location and atmosphere of the interrogation; the language and tone used by the police; whether the suspect is searched, frisked, or patted down; and the length of the interrogation."  <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 244 (2d Cir. 1998) (internal citations omitted).

Considering the totality of the circumstances in this case, it is clear Defendant was not in custody on March 16, 2005.  Defendant was not threatened or compelled to show up at the interview.  Doud had merely asked Defendant to meet and, driven

by self-interest, he made the voluntary choice to do so, apparently wanting to learn what information law enforcement had and to see whether he could explain his way out of trouble.

The mutually chosen location for the interview, a McDonald's parking lot, was neutral ground. Of course, the interview was ultimately conducted in the agents' unmarked vehicle but nothing about those circumstances would have made a reasonable person in Defendant's shoes believe he was being restrained in a way similar to a formal arrest. Defendant was not searched, frisked, or patted down. He was given the front seat of the vehicle, the vehicle's doors remained unlocked, and no guns were ever visible. There is simply nothing to suggest Defendant could not have left the vehicle whenever he wished. In fact, at the midpoint of the interview Doud himself suggested stopping the interview so that everyone could go their own way and not waste any more time. Moreover, the atmosphere of the interview remained calm[4] and the entire episode lasted at most one and a half hours, after which Defendant and the agents parted ways in their own vehicles without an arrest being made.

---

[4]The Court finds no merit to Defendant's position that the atmosphere of the interview ceased to be calm around the time he decided to tell the truth, as evidenced by Defendant's comment that he was about "to crack." While Defendant's demeanor and attitude certainly changed as he wrestled with the inner agony of breaking his code of silence, nothing suggests the agents' demeanor or attitude changed or that they did anything, such as ask increasingly hostile questions, that would have made the scenario more custodial in nature.

In sum, the agents were not required to advise Defendant of his <u>Miranda</u> rights because a reasonable person in Defendant's position would not have felt himself to be subjected to the restraints comparable to those associated with a formal arrest.

IV. <u>Conclusion</u>

For these reasons, Defendant's Motion to Suppress (Paper 15) is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 27th day of May, 2008.

/s/ J. Garvan Murtha<br>
J. Garvan Murtha<br>
United States District Judge